Petek A. Quinn, J.
Plaintiffs are 12 tenants of 114 East 72nd Street, who seek a preliminary injunction enjoining the sale of the building to 114 Tenants Corp., a co-operative corporation. The closing, scheduled for June 28,1972, has been stayed by consent of the parties until the determination of this motion.
Plaintiffs are tenants of the building, but have not purchased their apartments under the plan of co-operative organization. Their petition alleges nine distinct bases for the relief sought, namely:
1. False statements made by the two real estate agents to induce purchases by tenants ;
2. Failure to declare the plan effective within the 18-month ■statutory period;
3. Failure of the real estate agents to disclose the true condition of the building to outside purchasers;
4. Violation of the civil rights of one tenant purchaser in regard to the price charged for her apartment;
5. The illusory character of the agreement to purchase shares;
6. That four of the. tenant purchasers were permitted to buy their apartments at prices substantially below that set forth in the plan;
7. That defendant, Douglas, Gibbons-Hollyday and Ives, was acting as an undisclosed selling agent and is to receive a fee which was not disclosed in the plan prospectus;
8. Failure and refusal of the sponsor to maintain the building in a status of luxury condition in accordance with the terms of the plan;
9. An unreasonable and inaccurate allocation of shares among the 45 apartments in the building.
In addition to the restraining order, plaintiffs seek to have the plan declared null and void, to exclude certain purchasers in computing the 35% 'Statutory requirement of the Bent Stabilization Law of 1969 and to have the plan declared illegal and invalid.
Plaintiffs also instituted an article 78 proceeding against several of the defendants in this action and also named as defendants in that proceeding the Housing and Development Administration of the City .of.' New York, Beal Estate Industry Stabilization Association of New York City and the Attorney-General of the State of New York.
*445 The article 78 petition was denied by order datéd June 27, 1972. That order disposed of the second cause -of action herein by determining that the plan had been declared effective within the 18-month statutory period.
In the first cause of1 action plaintiffs allege without detail misrepresentations and misstatements concerning the plan. There is no allegation that any plaintiff relied on the alleged misrepresentations. In fact, plaintiffs cannot so allege because they did not accept the plan. The first cause is dismissed (Tuvim v. 10 E. 30 Corp., 38 A D 2d 895; Schumann v. 250 Tenants Corp., 65 Misc 2d 253).
The third cause alleges that in violation of the Martin Act, the sponsor of the plan emitted certain statements or did not comply with the plan. The plaintiffs did not rely on the plan, and they may not assert such a claim (Tuvim v. 10 E. 30 Corp., supra; Schumann v. 250 Tenants Corp., supra).
Furthermore, the cause alleges that the sponsor did not “ disclose to the outside purchasers an engineering report made for and at the expense of the tenant occupants which disclosed serious defects of the building Since such report was not under sponsor’s control, there was no duty to disclose under the Martin Act (General Business Law, art. 23-A)-.
The third cause is dismissed.
There, is no validity to the fourth, cause of action. The tenant purchaser involved, Martina A. Boggioni, is not a plaintiff here, but is one of the tenant purchaser defendants.. In an affidavit submitted by her attorney, it is clear that she does not allege any violation of her civil rights. Blaiiitiffs have no standing to maintain such an action in her behalf.
The fifth cause of action alleges that the purchase agreements became illusory when, as a result of the third amendment to the plan, the required deposit price for each apartment was reduced from 10% of the total price to $1 per share. A similar reduction in deposit price to induce additional purchasers was upheld by Mr. Justice Mabkowitz in Richards v. Kaskel (69 Misc 2d 435, 441). It is upon the authority of that case that the fifth cause of action is found to have no legal substance.
The same may be said for the sixth cause of action. In the Richards case (supra, p. 435) Mr. Justice Mabkowitz construed the words “ then in occupancy ” in section YY51-6.0 (subd. C, par. [9], cl. [a]) of the Administrative 'Code of the City of Hew York (Bent Stabilization Law) to mean occupancy at the time the plan is declared effective. It appears that the four tenant purchasers named in this cause of action, namely, Bela *446 mut, G-oIdman, Klein and Monroe timely accepted the offer to purchase. The fact that they did so at reduced prices does not affect the validity of their purchases. On the date that the plan was declared effective, it appears that 11 of the 45 apartments were vacant. Thirty-five percent of the remaining 34 apartments amounts to 11.90. As ,of that date 14 tenants in physical possession of their apartments had purchased them under the plan, and two outsiders (nontenants) had contracted to purchase vacant apartments. Even excluding the two nontenants, the guidelines here adopted from the Richards. case (supra), as tó the 35% statutory requirement were more than satisfied in the instant case.
The seventh cause of action alleges that the Co-operative Corporation was required to pay to Douglas G-ibbons-Hollyday & Ives, Inc. a fee of $25,000 for services rendered in connection with the plan. This is evidentially disputed. Plaintiffs were required to meet the issue with probative facts. Their failure to do so requires dismissal of the seventh cause (Indig v. Finkelstein, 23 N Y 2d 728). In any event, even if true, plaintiffs were not damaged.
Plaintiffs do not show themselves to be damaged in any way under the allegations made in their eighth cause .of action. It appears that the third amendment to the plan dated January 17, 1972 provides for a reserve fund of $150,000 which will be utilized in part to make necessary repairs to the building. The original plan provided for a repair fund of $50,000 and a working capital of $30,000. These contingencies were consolidated into the single reserve fund by the third, amendment and appear to be adequate to cover the complained-of repairs.
The allocation of shares complained of in the ninth cause of action does not disclose any unreasonable conduct on behalf of the sponsor for which plaintiffs may maintain an action. Under the plan, the following allocation of stock shares is made:
“A” line of apartments — 37.5%
“ B ” line of apartments — 20.3%
“ O” line of apartments — 42.15%
Three companies had previously been asked to submit schedules independently of each other, and those proposals resulted in these allocations, respectively:
“A” line — 38.05%', 39.01% and 37.03%
“B” line — 21.1%, 21.3% and 22.5%
“C” line — 40.80%, 39.58% and 40.19%
The variance between these three proposals and that of the sponsor which was ultimately incorporated in the plan is mini *447 mal, and does not evidence any discrimination against the “ B ” line of tenants as charged.
Accordingly, defendants are entitled to summary judgment dismissing all the causes of action of the complaint.
The motion for a temporary injunction is denied. Even if the complaint was not dismissed, no reason exists for temporary injunctive relief.